Case:C26-e1326-13D4cumDentum0e0n1t1852749P1age:P1age:Date FDilaedt:e0F9i/l1e5d/:2005/2/02/0E2n6try IEDn:tr6y8I4D3:8698953084

**Nos. 26-1314, 26-1628**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

SVITLANA DOE; MAKSYM DOE; MARIA DOE; ALEJANDRO DOE; ARMANDO DOE; ANA DOE; CARLOS DOE; OMAR DOE; SANDRA MCANANY; KYLE VARNER; WILHEN PIERRE VICTOR; HAITIAN BRIDGE ALLIANCE; ANDREA DOE; VALENTIN ROSALES TABARES; MARIM DOE; ADOLFO GONZALEZ, JR.; ALEKSANDRA DOE; TERESA DOE; ROSA DOE; MIGUEL DOE; LUCIA DOE; DANIEL DOE; GABRIELA DOE; NORMA LORENA DUS; DAVID DOE; FRANCISCA DOE; JOHN DOE; JOSE DOE; LUCIANA DOE,

Plaintiffs - Appellees,

v.

MARKWAYNE MULLIN, in the official capacity as Secretary of Homeland Security; DAVID J. VENTURELLA, in the official capacity as Acting Director of U.S. Immigration and Customs Enforcement; RODNEY S. SCOTT, in the official capacity as Commissioner of U.S. Customs and Border Protection; JOSEPH B. EDLOW, in the official capacity as Director of U.S. Citizenship and Immigration Services; DONALD J. TRUMP, in the official capacity as President of the United States,

Defendants - Appellants.

---

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:25-cv-10495 (Talwani, I.)

---

# BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS – APPELLANTS AND REVERSAL

---

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mcrapo@fairus.org
(202) 328-7004

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

Dated: September 15, 2026

Respectfully submitted,

s/ Matt Crapo

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES .......................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................1

SUMMARY OF ARGUMENT ........................................................................1

ARGUMENT ...............................................................................................2

I. Executive power to exclude aliens ..........................................................2

II. The Secretary's termination of the family reunification parole programs was an exercise of presidential authority and is unreviewable under the APA .....4

CONCLUSION ............................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
333 U.S. 103 (1948) .......... 2

*Dalton v. Specter,*
511 U.S. 462 (1994) .......... 5, 6

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
189 F. Supp. 3d 85 (D.D.C. 2016) .......... 5

*Leng May Ma v. Barber,*
357 U.S. 185 (1958) .......... 3

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) .......... 2

*Tulare Cty. v. Bush*,
185 F. Supp. 2d 18 (D.D.C. 2001) .......... 5

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S 537 (1950) .......... 2

## STATUTES

8 U.S.C. § 1101(a)(13)(B) .......... 3

8 U.S.C. § 1182(d)(5)(A) .......... 3

8 U.S.C. § 1182(f) .......... 3

## MISCELLANEOUS

Executive Order 14165, *Securing Our Borders*,
90 Fed. Reg. 8467 (Jan. 20, 2025) (published Jan. 30, 2025) .......... 4

*Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025) .......... 4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Federation for American Immigration Reform ("FAIR") is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or amicus curiae, with the aim of advancing this mission.[1]

## SUMMARY OF ARGUMENT

The DHS Secretary's termination of the previous Administration's categorical grant of Family Reunification Parole to aliens from Cuba, Ecuador, Guatemala, Haiti, Honduras, and El Salvador (Family Reunification Parole) was an exercise of inherent Executive power under Article II of the Constitution as well as discretionary delegated legislative power via the parole statute. Indeed, because the Secretary's actions were directed by the President, her actions are unreviewable under the Administrative Procedure Act (APA). Because the district court erred in subjecting the Secretary's termination of parole to APA review, this Court should reverse.

---

[1] All parties have consented to the filing of this *amicus* brief. No counsel for any party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

## ARGUMENT

### I. Executive power to exclude aliens.

It is indisputable that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). It is also well-established that the President has independent authority in the areas of foreign policy and national security. *See*, *e.g.*, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent *executive* power.") (emphasis added).

Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). And, granted the president's inherent constitutional power, as Commander-in Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

"An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission . . . ."). In *Leng May Ma v. Barber*, the Supreme Court held that parolees, even though physically present within the United States, have not effected an entry and are treated under the law as though they remain detained at the border. 357 U.S. 185, 188-90 (1958). Accordingly, parolees are subject to the President's inherent exclusion power. By reason of this power, as explained below, Plaintiffs are unlikely to succeed on the merits of their action, and this Court accordingly should vacate the district court's order enjoining agency action.

**II. The Secretary's termination of the family reunification parole programs was an exercise of presidential authority and is unreviewable under the APA.**

On January 20, 2025, President Trump directed then-Secretary Noem to "[t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders. Executive Order 14165 at § 7(b), *Securing Our Borders*, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) (published Jan. 30, 2025). On December 15, 2025, Secretary Noem complied with the President's directive and issued a notice in the Federal Register terminating the Family Reunification Parole programs and notifying aliens who had been granted parole under that program that any unexpired period of parole would end on January 14, 2026. *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025). In this notice, Secretary Noem made clear that she terminated the Family Reunification Parole programs "consistent with the President's direction and for the independent reasons stated in this notice…." *Id.* at 58033. Accordingly, Secretary Noem exercised both presidential and statutory authority in terminating the Family Reunification Parole programs.

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA

reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decision making to the discretion of the President, judicial review of the President's decision is not available."). Here, one source of independent authority for the DHS Secretary's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she terminated the Family Reunification Parole programs pursuant to his executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of [6] discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, i.e., the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, Presidential Administration, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28 (D.D.C. 2001)

("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton*, 511 U.S. at 470) (other internal citations omitted).

Here, the Secretary of DHS, in addition to "other independent reasons," acted at the direction of the President and implemented his executive order when she terminated the Family Reunification Parole programs. Accordingly, Secretary Noem exercised independent Article II authority in terminating the Family Reunification Parole programs, and the district court lacked jurisdiction to review her actions under the APA. *Dalton*, 511 U.S. at 477. It is, of course, not to the prejudice of the unreviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order.

Dated: September 15, 2026

Respectfully submitted,

/s/ Matt Crapo

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mcrapo@fairus.org
(202) 328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

**CERTIFICATE OF COMPLIANCE**

1. The foregoing brief complies with the type-volume limitation of FED. FED. R. APP. P. 29(a)(5) because:

This brief contains 1,396 words, including footnotes, but excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: September 15, 2026 Respectfully submitted,

s/ Matt Crapo

**CERTIFICATE OF SERVICE**

I certify that on September 15, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Matt Crapo